# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### DELTA DIVISION


LAWYER PORTER, JR.                                                                    PLAINTIFF

VS.                                                                    CASE NO. 2:09-CV-00222

TUNICA COUNTY, MISSISSIPPI                                                         DEFENDANT

---

### MEMORANDUM OPINION

This cause comes before the court on the motion of Defendant Tunica County for

summary judgment pursuant to Federal Rule of Civil Procedure 56.  The plaintiff has responded

in opposition.  Having considered the motion and submissions of the parties, the court finds that

the motion is well taken and should be granted.

Tunica County appointed Lawyer Porter Jr., an African American male, as Justice Court

Clerk in July 2005.  Porter was hired as an at-will employee and had no prior experience with the

Justice Court.  His responsibilities included managing employees and collecting outstanding

fines owed to the court.  In November 2007, he received a salary increase and was then

reappointed as clerk in January 2008.  Around that time, the Tunica County Board of

Supervisors (the "Board"), which consists of five men, began receiving complaints about Porter's

work performance.  On March 3, 2008, the Board held a meeting wherein one of Porter's

subordinates and a Justice Court judge testified regarding their the complaints about Porter's

performance.  After hearing the testimony, the Board voted to terminate Porter.  The minutes

from the meeting state that Porter was terminated for poor job performance, poor management

skills, increase in the amount of outstanding fines, lack of knowledge with regard to the

1

operation of the Justice Court system, and failure to file training certificates within 90 days of appointment as required by MISS. CODE ANN. § 9-11-29.  Porter filed his training certificates with the Circuit Clerk's office on February 29, 2008, almost three years after he was first appointed.  Tunica County subsequently hired an African American female to replace him as Justice Court Clerk.

After his termination, Porter filed a claim with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on gender and race. The EEOC found insufficient evidence to establish a violation and issued Porter a right to sue letter.  On December 23, 2009, he filed a complaint in this court, asserting race and gender discrimination, intentional infliction of emotional distress, breach of implied covenant of good faith and fair dealing, and breach of contract.  Since the plaintiff's discrimination claims are brought under Title VII of the Civil Rights Act of 1964, §§ 701 et seq., and 42 U.S.C. §§ 2000e et seq., this court has subject matter jurisdiction based on a federal question, 28 U.S.C. § 1331.  The court has supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367(a).

Tunica County has filed the instant motion for summary judgment arguing that the plaintiff was fired for legitimate nondiscriminatory reasons.  Tunica County contends that Porter's race and gender discrimination claims must fail because all of the Board members are male and he was replaced by member of his same race.  The defendant additionally argues that there was no employment contract and that the elements for an emotion distress claim are not present.  Tunica County maintains that the court should grant summary judgment because there are no genuine issues as to any material fact warranting trial.

In response, Porter asserts that the defendant's reasons for terminating him are pretext for

discrimination.  He contends that he was treated less favorably than Caucasian and female

employees.  Porter admits that he did not comply with the statutory requirement to submit

training certificates within 90 days of taking office. He argues, however, that because Tunica

County waited so long, it raises the inference that the defendant used the statutory violation to

cover its true motive.  Porter also claims that summary judgment should be denied because a

question exists as to whether the employee handbook constitutes a contract. He concedes his

claim for intentional infliction of emotional distress.

Summary judgment should be granted when the evidence shows that there is no genuine

issue of any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.

Civ. P. 56(a).  A genuine issue of material fact exists where a jury could reasonably find for the

nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  When ruling on a

motion for summary judgment, the court must construe the facts and evidence in the light most

favorable to the nonmoving party. *Ford, Bacon & Davis, LLC v. Travelers Ins. Co.,* 635 F.3d 734,

736 (5th Cir. 2011) (citing *Holt v. State Farm Fire & Cas. Co.,* 627 F.3d 188, 191 (5th Cir.

2010)).  Once the party seeking summary judgment meets its burden, the nonmoving party must

"come forward with specific facts showing a genuine factual issue for trial." *Harris ex rel.*

*Harris v. Pontotoc Cnty. Sch. Dist.*, 635 F.3d 685, 690 (5th Cir. 2011).  The nonmoving party

cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but

instead must show that there is an actual controversy warranting trial. *Little v. Liquid Air Corp.*, 37

F.3d 1069, 1075 (5th Cir. 1994).

In order to survive summary judgment on a claim of employment discrimination based on

circumstantial evidence, the plaintiff must first establish a prima facie case of intentional

discrimination. *Bryan v. McKinsey & Co.,* 375 F.3d 358, 360 (5th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 142 (2000)). The burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). If the employer satisfies its burden, the plaintiff must then show that either "(1) the employer's reason is pretext or (2) that the employer's reason, while true, is only one of the reasons for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Burrell v. Dr. Pepper/ Seven Up Bottling Grp.*, 482 F.3d 408, 411-412 (5th Cir. 2007).

To make a prima facie showing of employment discrimination, the plaintiff must show that he (1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside of the protected class, or in the case of disparate treatment, show that other similarly situated employees were treated more favorably. *Bryan,* 375 F.3d at 360; see also *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 (5th Cir. 1999). "In disparate treatment cases, the plaintiff-employee must show 'nearly identical' circumstances for employees to be considered similarly situated." *Berquist v. Wash. Mut. Bank,* 500 F.3d 344, 353 (5th Cir. 2007).

There is no dispute that Porter is a member of a protected class (African American), is qualified for the position, and was subject to an adverse employment decision. The parties agree that he was not replaced by someone outside of his protected class. The plaintiff, however, argues that he was treated less favorably than similarly situated Caucasian and female employees. As to his claim of racial discrimination, the plaintiff asserts that there were two adverse employment actions: denial of employment privileges and wrongful termination.

4

The plaintiff claims that Tunica County did not terminate Wiley Bouchillon, a Caucasian male department director, who had similar complaints against him concerning his job performance. According to Porter, the Board conducted an investigation into the complaints against Bouchillon, but did not afford Porter the same privilege. The plaintiff asserts that Tunica County's policies and procedures allow department heads to respond to employee complaints, but he was never given an opportunity to respond to the complaints made against him. Porter contends that he was treated less favorably than his Caucasian counterpart and that the defendant would not have fired him if he was Caucasian.

Before evaluating whether the plaintiff was treated less favorably than the other department head, the court will first determine whether the employees are similarly situated. It is well established by the Fifth Circuit that employees are considered similarly situated when their circumstances, including misconduct, is "nearly identical." *Perez v. Texas Dep't of Criminal Justice, Inst'l Div*., 395 F.3d 206, 213 (5th Cir. 2004). Whether those outside of the protected group are treated more favorably turns on whether the violations were of "comparable seriousness." *McDonnell Douglas*, 411 U.S. at 804.

Porter and Bouchillon serve as department heads and report to the same immediate supervisor. Both employees received complaints concerning their job performance and management skills. Two Caucasian witnesses testified in front of the Board regarding Porter's performance and two African American employees complained against Bouchillon. The plaintiff notes that he and Bouchillon had financial declines in their respective departments. The most glaring difference between the two is that Porter failed to comply with the statutory requirement for his position. The plaintiff was reappointed in January 2008 and filed his training certificates

5

in February 2008.  Neither party discusses whether the filing requirement is applied separately

for each appointment period.  However, it appears reasonable to conclude that the plaintiff only

failed to comply with the statutory requirement during his first appointment period. As he was

reappointed in January, he met the filing requirement during his second appointment period.

This raises a question as to whether the statutory violation was a valid consideration in the

defendant's decision to fire Porter during his second term.  Nonetheless, the court adheres to the

rule that discrimination laws are not "vehicles for judicial second-guessing of business

decisions." *Deines v. Texas Dept. of Protective and Regulatory Servs.*, 164 F.3d 277, 281 (5th

Cir. 1999).  Other than the statutory violation, Porter and Bouchillon's misconduct is very much

alike.  As such, the court will consider the employees "similarly situated" for purposes of its

analysis.

Porter claims that he was treated less favorably because the defendant investigated the

complaints against Bouchillon, gave him an opportunity to respond to the complaints, and did

not terminate him despite the complaints.  Tunica County counter argues that there was no

investigation into the claims against Bouchillon.  The defendant maintains that Porter and

Bouchillon's supervisor conducted his own investigation into Bouchillon's discipline of other

employees.  Tunica County contends that the Board never authorized the supervisor's

investigation and that it was unrelated to the complaints against Bouchillon.  The only

investigation authorized by the Board was one conducted in response to another employee's

EEOC claim.  The defendant has submitted deposition testimony and a privilege log to support

its position.  Further, Porter has not indicated that he ever requested an investigation.  In light of

the undisputed proof that there was no investigation into the complaints against the Caucasian

director, Porter's claim that he was treated less favorably than similarly situated employees must fail.

The court now looks to the plaintiff's argument that he was wrongfully terminated in violation of Title VII. Porter does not dispute the Board's reasons for terminating him. He admits his failure to comply with the statutory filing requirement. However, he argues that Tunica County used the statutory violation as pretext for discrimination. As noted above, the plaintiff was fired for poor job performance, poor management skills, increase in the amount of outstanding fines, lack of knowledge with regard to the operation of the Justice Court system, and failure to file training certificates within 90 days of his appointment. The defendant has provided "clear and reasonably specific reasons" for its decision to terminate Porter. *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 258 (1981). In response, the plaintiff argues that Tunica County cannot prove that these legitimate reasons truly existed.

Porter argues that the Board's decision was inconsistent with its prior actions. The Board gave the plaintiff a raise and reappointed him as clerk only a few months before terminating him. Though the plaintiff was fired for an increase in outstanding fines, Porter never received any complaints on his monthly financial reports the entire time he was employed as Justice Court Clerk. The court acknowledges that the Board discussed Porter's performance at meetings prior to the one in which he was fired. Nothing in the record suggests that the Board ever discussed Bouchillon's job performance during its meetings.

The court gives weight to the plaintiff's admission that he committed some of the acts for which he was discharged. Porter admits to and offers explanations for the reasons why complaints were made against him, there was an increase in outstanding fines, and he failed to

7

comply with the statutory filing requirement. Porter asserts that he would not have been terminated if he was Caucasian and the witnesses complaining against him were African American. However, the plaintiff's argument that he was fired based on his race is weakened by the fact that the defendant hired an African American female to replace him as clerk.

Tunica County has offered legitimate, nondiscriminatory reasons for which the plaintiff was fired. Yet, the plaintiff wishes for the court to overlook the validity of these reasons and focus on some possible underlying racial motive. He asserts that Tunica County cannot prove that its reasons for termination are true. This issue turns on whether the Board relied, in good faith, on nondiscriminatory reasons to terminate the plaintiff. Porter has raised questions as to whether some of the stated reasons are pretext for discrimination. Nonetheless, the plaintiff admits to several of the reasons offered by Tunica County. He failed to comply with the statutory filing requirement, there was an increase in outstanding fines, he received complaints about his performance, and witnesses testified against him before the Board. The plaintiff was an at-will employee who could be fired for any nondiscriminatory reason. Taking this into consideration, the court concludes that race played no role in the Board's decision to terminate the plaintiff. Summary judgment is proper.

As to the claim of gender discrimination, the plaintiff asserts that there was one adverse employment action: wrongful termination. He claims that he was treated less favorably than his predecessor, a Caucasian female, who was not fired or scrutinized despite having outstanding fees. The court need not further consider the plaintiff's argument because the former clerk is not a similarly situated employee. Although Porter and his predecessor were employed in the same position, they do not share "nearly identical" circumstances and misconduct. Porter was

terminated for several reasons related to his job performance. The only comparisons the plaintiff

offers is that his predecessor had outstanding fees and undocumented complaints. There is no

evidence that witnesses testified against the former clerk, that she lacked knowledge of the

operation of the Justice Court, or that she failed to timely file her training certificates. As to the

statutory violation, Porter points out that Tunica County cannot confirm whether or not the

former clerk timely filed her training certificates. Even assuming she had not complied with the

statute, her circumstances and misconduct would still not be "nearly identical" to the plaintiff's.

Since the employees are not similarly situated, Porter cannot establish a prima facie case of

gender discrimination. Summary judgment on this claim should be granted.

The plaintiff's remaining claims can be resolved by determining whether the employee

handbook is considered as a contract. The Tunica County employee handbook provides in

relevant part as follows:

> Statements of specific grounds for termination set forth in this manual...are
> examples only...and are not intended to restrict Tunica County's right to terminate
> at will.

> 3. This Handbook...does not create and is not intended to create a contractual
> obligation on the part of Tunica County that alters in any way the at-will
> employment status of any employee of the County.

Doc. 45 Attachment C.

The Mississippi Supreme Court has stated that "an employee handbook cannot be

considered a contract between the employer and the employee where the handbook explicitly

states that the employee can be terminated at will." *Hartle v. Packard Electric*, 626 So. 2d 106,

109 (Miss. 1993) (citing *Perry v. Sears Roebuck & Co.*, 508 So. 2d 1086, 1088 (Miss. 1987)).

As the defendant's employee handbook explicitly states that employees can be terminated at

will, the court finds that the handbook is not a contract.  Since there is no contract, there can be no claim for breach of contract or breach of implied covenant of good faith and fair dealing.  The court notes that the plaintiff's claim for breach of implied covenant of good faith and fair dealing would additionally fail because Mississippi law does not recognize such covenants in employment at-will relationships. *Young v. North Mississippi Medical Ctr.*, 783 So. 2d 661, 663 (Miss. 2001).

Based on the foregoing analysis, the defendant's motion for summary judgment is GRANTED.  A separate judgment shall will be issued this day pursuant to Fed. R. Civ. P. 58.

SO ORDERED, this the 13th day of January 2012.


**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**